## The T. H. & I. R. R. Co. v. Roland Clark, Adm'r of the Estate of William Spaulding, Deceased.

1. *Special Interrogatories—Exception.*—Where a party moves the entering of a judgment on special interrogatories, notwithstanding the general verdict, and the motion is overruled, an exception to the ruling does not need to be embodied in a bill of exceptions.

2. *Rate of Speed as Bearing on the Question of Negligence of a Railroad Company.*— A rate of speed at which a train can be run with safety to the passengers cannot, in itself, be deemed carelessness as against one who gets hurt at a crossing. The tendency of the times seems to be—indeed the sentiment now apparently prevails— that the railroads shall run trains for carrying passengers and the mails at a high rate of speed ; and the rights of individuals, and the degree of caution which they must use in passing over a railroad track, must be measured and adjusted accordingly. Still it is, and doubtless will remain, true that the rate of speed, in connection with other circumstances, may be considered in determining an issue of negligence.

3. *Contributory Negligence.*—One approaching a railroad track of which he is aware is bound to use caution therein, and the want of such reasonable caution bars an action by an administrator for his death.

Filed May 16, 1881.

Appeal from Hendricks Circuit Court.

John G. Williams and L. M. Campbell, for appellant, cited statutes as to special interrogatories; *Bellefontaine R. R. Co.* v. *Hunter*, 33 Ind. 336; *St. Louis, etc., R. R. Co.* v. *Mathias*, 50 Ind. 66, as to necessity of precaution on approaching a railroad track; also, *Cincinnati, etc., R. R. Co.*, 54 Ind. 197, on same point; *Shanks* v. *Albert*, 47 Ind. 461; *Graham* v. *Castor*, 55 Ind. 559; *Penn. Co.* v. *Sinclair, Admr.* (Nov. term, 1878, Ind.); *Grand Rapids, etc., R. R. Co.* v. *Boyd* (Ind. May 28, 1879), as to rendering judgment on special interrogatories, against the general verdict.

John V. Hadley, James O. Parker, E. G. Hogate and R. B. Blake, for appellee, cited *Shaw* v. *National Bank*, 60 Ind. 83, as to general verdict and interrogatories; *Insurance Co.* v. *Johnson*, 46 Ind. 315, as to necessity of a bill of exceptions; also, *Campbell* v. *Dutch*, 36 Ind. 504, on same point, and this case declared overruled; *Cleveland, etc.,* v. *Crawford*, 24 Ohio St. 631; *Indianapolis, etc., R. R. Co.* v. *Stout*, 53 Ind. 148, as to due caution by one injured by a train; *Amidon* v. *Goff*, 24 Ind. 128; *I. & St. L. R. R. Co.* v. *Stout, supra,* as to when special interrogatories overcome a general verdict; also, *Ridgway* v. *Dearinger*, 42 Ind. 157, on same point; *Bellefontaine, etc., R. R. Co.* v. *Hunter*, 33 Ind. 335, as to what the special interrogatories must contain in such case; *I. & St. L. R. R. Co.* v. *Stout, supra,* as to the degree of caution required of an injured person; Sher. and Redfield on Neg. § 477, as to the precaution required of a railroad company; Id. § 478; *Lafayette, etc.,* v. *Adams*, 26 Ind. 76; *Meyer* v. *Midland, etc., R. R. Co.*, 2 Neb. 319, as to obligation to diminish speed; Sher. and Red. on Neg. § 481, as to relative duties of a traveler and the company; *Bellefontaine, etc., R. R. Co.* v. *Hunter, supra; St. Louis, etc, R. R. Co.* v. *Mathias*, 50 Ind. 65, distinguished; *Lafayette, etc., R. R. Co.* v. *Adams*, 26 Ind. 76, as to the management of trains and rate of speed: *P., Ft. Wayne, etc, R. R. Co.* v. *Ruby*, 38 Ind. 294, that negligence is a question of fact for the jury, and if there is a conflict of evidence their verdict will not be disturbed.

John G. Williams, for appellee, in reply, cited *Salander* v. *Lockwood*, 66 Ind. 285, as overruling *Shaw* v. *National Bank*, 60 Ind.

83, and *Penn etc., R. R. Co.* v. *Sinclair*, 62 Ind. 301, as overruling *Lafayette, etc., R. R. Co.* v. *Adams,* 26 Ind. 76; *C. C. & I. R. R. Co.* v. *Elliott,* 28 Ohio St. 340; *Lake Shore, etc., R. R. Co.* v. *Miller,* 25 Mich. 274 as to care in crossing a railroad track.

Opinion of the court by Mr. Justice Woods.

The action was by the appellee against the appellant for causing the death of William Spaulding, the appellee suing as administrator of the estate of the deceased.

The complaint is in two paragraphs.

In both paragraphs it is shown that on the 30th day of January, 1878, the said William Spaulding was traveling in his wagon, drawn by two horses, along a public highway leading from the Cumberland road, in Hendricks county, Indiana, to the town of Danville, in the same county, which highway is known as the " Danville and Cartersburg Gravel Road," and crosses defendant's railroad in the midst of the town of Cartersburg, in said county of Hendricks.

The gravamen of the cause of action is stated in the *first* paragraph as follows, viz :

" And the plaintiff says that, as the said William Spaulding had reached said crossing in said town of Cartersburg, the defendant carelessly and negligently caused one of its locomotives with a train of cars attached thereto, to approach said crossing and then and there pass at a great and unusual rate of speed, over the track of said railroad, and without proper care, and negligently and carelessly omitted, while so approaching said crossing, to give any reasonable, timely or proper signals by ringing the bell, or sounding the steam whistle at a reasonable and proper distance from said crossing, by reason whereof he (Spaulding) was unaware of their approach, and that, by reason of said negligence and carelessness of said defendant, her servants and employes, and without any fault or negligence on his part, the said locomotive struck his horses and wagon on said crossing, thereby injuring said horses and demolishing said wagon, and instantly killing said William Spaulding."

In the second paragraph of the complaint the same state of facts is shown, but the defendant is charged with having " carelessly, recklessly, purposely, willfully and negligently " caused the death of Spaulding.

The answer was a general denial. Two trials by jury were had. The first jury failed to agree. The second gave a general verdict for the plaintiff, assessing the damage at one thousand dollars, and judgment was given accordingly. The jury returned answers to special interrogatories, and on these the appellant moved for judgment, notwithstanding the general verdict, and excepted to the overruling of the motion. No bill of exceptions was filed to show this exception, and counsel for the appellee claim that no question is saved for the consideration of this court. The point has been ruled against the position of counsel in *Salander* v. *Lockwood*, 66 Ind. 285, overruling in this respect *Shaw* v. *The Merchants' National Bank*, 60 Ind. 83, and following, though not citing *Campbell* v. *Dutch*, 36 Ind. 504.

The counsel for the appellant insist that the answers to interrogatories show affirmatively that the defendant was not guilty of the negligence charged, and that the deceased was guilty of negligence causing, or contributory to the cause of, his death.

The following are the interrogatories and answers to the jury, so far as pertinent to the questions to be decided:

1. If the deceased, William Spaulding, had stopped his team at any point within a distance of 150 yards from the railroad crossing, could he have heard the sound of the approaching train? Answer—Yes.

2. If the deceased had approached the railroad crossing driving only in a walk, and had looked out for the train at a distance of thirty feet therefrom, could he have stopped his team before reaching the track? Answer—Yes.

3. If the deceased had looked in a westerly direction, at a point sixty feet south of the crossing, could he have seen the approaching train in time to stop his team before reaching the track? Answer—No.

4. Was the defendant's train, on the evening of the 30th of January, 1878, at the time of the death of said Spaulding, being run at a greater rate of speed than was usual or customary for that particular train at that hour of the evening? Answer—No.

5. Had not the defendant, for a long period of time prior to the 30th of January, 1878, run a fast mail and express train east at about the same hour each evening, and at about the same rate of

speed at which the train was going on said January 30? Answer—Yes.

6. Could the deceased, by the use of ordinary care and prudence, on the evening of said date, have stopped his team before reaching the railroad crossing and avoided the accident? Answer—No.

7. Did not the agents of the defendant in charge of the train which killed the deceased, sound the whistle and give the signal at the usual distance from the crossing, viz.: about 800 feet west from the same? Answer—Yes.

8. Did not the deceased, at a distance of more than 100 feet south of the crossing, hear the sound of the approaching train, and attempt to cross the track before it? Answer—No evidence.

9. Did the engineer in charge on the 30th of January, 1878, see the deceased about to drive upon the track, or did he have reason from what he saw, to suppose the deceased was about to drive upon the track, in sufficient time to stop his train and prevent the collision? Answer—No.

10. Did not the deceased drive his team in a trot towards the railroad crossing for the distance of more than forty yards without stopping to look or listen for an approaching train? Answer—Yes.

11. Did not the deceased drive on the railroad crossing without stopping still at any point to look or listen for an approaching train; and was he not at the same time in a covered wagon, without any opening except in front? Answer—Yes.

12. What direction was the train going by which Spaulding was killed? Answer—East.

13. What direction was the wind blowing on said evening? Answer—From the east.

14. Was it not snowing considerably at the time the deceased drove on the railroad track, and was killed? Answer—Yes.

There is not enough shown by these answers to interrogatories to enable us to say, as matter of law, that either the appellant or the deceased was free from negligence, causing or contributing to the injury. All that is found concerning the conduct of the appellant, is in questions 4, 5, 7 and 9 and the answers thereto, but notwithstanding these, there may have been proof of negligence. For

instance, while it is shown that the whistle was blown eight hundred feet or more away, it is not found that the bell was rung, as the train approached the crossing. The rate of speed is not found, and though that train was not running faster than usual, its usual rate may have been very great, too great to be safe or justifiable. We do not mean to be understood as saying or intimating that any rate of speed at which a train can be run with safety to the passenger, can in itself be deemed carelessness as against one who gets hurt at a crossing. The tendency of the times seems to be—indeed, the sentiment now apparently prevails—that the railroads shall run trains for carrying passengers and the mails at a high rate of speed; and the rights of individuals and the degree of caution which they must use in passing over the railroad tracks must be measured and adjusted accordingly. Still it is and doubtless will remain true that the rate of speed in connection with other circumstances may be considered in determining the issue of negligence in such cases as the one under consideration.

It remains to be considered whether the deceased was free from fault.

It is not found that he knew there was a railroad in the vicinity and did not come upon it all unaware of the train's approach. He drove his team in a trot towards the crossing for the distance of more than forty yards without stopping to look or listen; but this may, for all that is found, have happened before he came within a mile or ten miles of the crossing. He drove on the railroad crossing without stopping still at any point to look or listen, but there is no rule which requires a man with a team to stop still. It would in many cases perhaps be impossible to do so, and under supposable circumstances, it would not be necessary to stop, either to look or listen.

We think it quite clear that the court committed no error in overruling the appellant's motion for judgment on the special findings, notwithstanding the general verdict.

The appellant made a motion for a new trial on written reasons filed, viz: "That the verdict is not sustained by sufficient evidence, and is contrary to law, which the court overruled."

This motion we think should have been sustained, there was no real conflict in the evidence, and what is lacking in the special find-

ings to show negligence on the part of the deceased, is fully sup-
plied in the evidence, and there is no evidence at all to support the
charge in the second paragraph of the complaint that the defend-
ant purposely and willfully caused the death.   Indeed it is by no
means clear that the evidence shows any negligence on the part of
the defendant.   But it does show that the deceased, possessed of all
his faculties, and knowing the existence and location of the rail-
road, and presumably familiar with the time of the fast train which
had been running regularly for some time before, approached the
crossing in a covered wagon with no opening except in front, when
about fifty yards from the crossing, he was seen by one witness to
check his team, lean forward, and look to the east and then to the
west ; and thence he drove on in a trot without stopping or looking
until he reached the crossing, at which instant the horses stopped
for a moment, whether through fright or the pulling of the lines by
the deceased, is uncertain, and then sprang across the track, the
engine striking the wagon and instantly killing said Spaulding.  On
the west side of the highway on which the deceased approached the
crossing, there were in some places buildings which obstructed the
view in the direction of the railroad to the westward, and one of
these buildings stood but thirty feet south of the railroad track ; the
other material facts are shown by the answers to the interrogatories.
If the deceased heard the coming train, as many of the witnesses
heard it, as he approached the crossing, his death was either a sui-
cide, or the result of gross carelessness, but whether he heard it or
not, his driving upon the crossing in a trot, under the circumstances
was certainly such contributory negligence on his part as bars
the action of his administrator for his death.

The counsel for the appellee insists that the presence of the
houses obstructing the view, and the fact that it was snowing, were
circumstances that made it gross negligence on the part of the ap-
pellant to move its train at the rate of speed at which it was run-
ning at the time of the accident.   It seems to us on the contrary
that these were circumstances which enhanced the degree of caution
with which the deceased ought to have approached the crossing.

The judgment of the circuit court is reversed with costs, and
with instructions to grant a new trial.

## SELLING PUBLIC OFFICES.

It appears strange that as late as the year 1850, the statute of Vermont authorized the office of constable to be sold at public auction to the highest bidder of the town, and a collectable note could be given for the amount of the bid.   But while the statute still existed, the supreme court spoke of it in the most uncomplimentary terms, declaring it to be more corrupting and demoralizing than even occult measures for procuring office would be; *Thetford* v. *Hubbard* 22 Vt. 446. Vermont's neighbor, New Hampshire, as early as 1823, repudiated this method of obtaining constables, because " personal merit ought to be the sole passport to office ;" *Meredith* v. *Ladd* 2 N. H. 518; but ten years later, in 1833, the court was called on to condemn the " practice " of setting up the *collector's* office at vendue, to be knocked off to the lowest bidder; *Cardigan* v. *Page* 5 N. H. 182. It is well that all such " practices" have ceased, except, we believe, in some States still, the " poor house "—where those outcasts " whom nobody owns " are thrust as a matter of sympathy—with its inmates and farm, is let out at auction, so that, as a legitimate consequence the public now and then, are regaled by accounts of fiendish barbarities inflicted on the unfortunates by the venal wretches who manage the "job" of dispensing the people's " charities."